**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                              No. CR 18-3065 RB

NORA AGUILERA,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Ms. Aguilera's Motion for Compassionate Release, filed on March 22, 2021. (Doc. 155.) Having reviewed the parties' submissions, the record, and the applicable law, the Court finds the motion is not well-taken and should be **DENIED**.

**I.**    **Background**

On January 23, 2019, Ms. Aguilera pled guilty to three counts of an Indictment charging: (1) conspiracy to distribute 50 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); and (2) two counts of possession with intent to distribute 50 grams and more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Docs. 65–66; 111.) On May 30, 2019, the Court sentenced Ms. Aguilera to 60 months imprisonment. (Docs. 112–13.)

Ms. Aguilera has served almost 35 months of her sentence, and her anticipated release date is December 30, 2022. *See* Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Aug. 11, 2021). She now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce her sentence due to the COVID-19 pandemic. (*See* Doc. 155.)

## II.    Discussion

Ms. Aguilera seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [she] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Ms. Aguilera filed such a request with the warden of Victorville on December 30, 2020, and again on January 29, 2021, but there is no evidence that the warden ever responded. (*See* Docs. 155 at 3; 155-2.) The Government concedes that she has exhausted her administrative remedies. (*See* Doc. 158 at 4.)

Ms. Aguilera asserts that extraordinary and compelling circumstances exist due to the unprecedented COVID-19 pandemic. (Doc. 155 at 7–12.) She argues that her medical conditions put her at risk for severe illness from COVID-19. (*Id.* at 7–11.) The Court agrees that Ms. Aguilera, who is severely obese with a body mass index (BMI) of 54,[1] has a medical condition that puts her at risk of severe illness if she contracts COVID-19. *See Underlying Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021). The Government acknowledges that the CDC lists obesity as a medical condition that puts individuals at an increased risk for severe illness from

---

[1] "A BMI of 30 kg/m² or higher is considered obese." Body Mass Index (BMI) In Adults, https://www.heart.org/en/healthy-living/healthy-eating/losing-weight/bmi-in-adults (last reviewed Aug. 1, 2014).

COVID-19. (Doc. 158 at 5.) The Government argues, however, that because Ms. Aguilera is in her early 40's, has received at least one dose of the Moderna vaccine, and is otherwise in good health, the risk presented from her obesity does not constitute extraordinary and compelling circumstances that qualify for potential release in the face of the pandemic. (Doc. 158 at 6 (citing Docs. 158-2 at 12; Doc. 155-3).) The Court declines, however, to expressly make this determination, because other factors weigh against a sentence reduction.[2]

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;

---

[2] Carlos Flores, the Supervising United States Probation Officer, submitted a Memorandum regarding Ms. Aguilera's motion. (*See* Doc. 161.) Mr. Flores stated that "the United States Probation Office conducted a home visit of the defendant's proposed residence . . . ." (*Id.*) Ms. Aguilera "plans to reside with her cousin and" her nephew, and the Probation Office found the residence suitable. (*Id.*) However, the Court notes imposed a requirement that Ms. Aguilera reside up to six months in a residential reentry center as a special condition of supervised release. (Doc. 114.) The Court finds that Ms. Aguilera's placement with her cousin would be inappropriate before she finishes her stay at the reentry center.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The Government argues that Ms. Aguilera's drug trafficking crime, in which she involved both her mother and minor son, as well as her refusal to provide information about her mother's involvement, do not support the grant of a sentence reduction. (Doc. 158 at 7.) Ms. Aguilera "was with her 17-year-old son when she obtained . . . 69.827 net grams of pure methamphetamine for a woman later identified as [her] mother." (*Id.* at 2 (citing Doc. 98 (PSR) ¶ 12).) In total, Ms. Aguilera was held responsible for distributing 168.3 grams of pure methamphetamine. (*Id.* (citing PSR ¶ 14).) Ms. Aguilera declined to acknowledge her mother's involvement in the drug trafficking organization, resulting in her inability to receive a sentence reduction based on her cooperation. (*Id.* at 2 n.3.) Ms. Aguilera contends that any argument about her failure to cooperate against her mother is unavailing and irrelevant to her motion for compassionate release. (Doc. 162

4

at 4.) She "had no legal obligation to" cooperate and enjoyed "a Fifth Amendment privilege against self-incrimination." (*Id.* (citations omitted).) She also points out that "she qualified for a safety valve reduction . . . [,] which would of course have required her to truthfully debrief with the Government." (*Id.* (citing 18 U.S.C. § 3553(f)(5)).)

Ms. Aguilera was assigned a criminal history category of II due to two previous convictions, both of which are non-violent. (*See* PSR ¶¶ 32–34.) There is no record evidence that Ms. Aguilera has incurred any disciplinary reports during her incarceration. What concerns the Court, however, is the lack of evidence concerning courses and programming Ms. Aguilera has completed while incarcerated. The only record related to such programming is a note that Ms. Aguilera declined to participate in the Residential Drug Abuse program (Doc. 155-3 at 33), which is particularly disappointing given Ms. Aguilera's "struggles with addiction [that] began as a teenager . . . and have been ongoing over the course of her life." (Doc. 155 at 2 (citing PSR).) Moreover, the Court recommended that Ms. Aguilera "participate in the [BOP] 500 hour drug and alcohol treatment program" (Doc. 114 at 3), and there is no evidence that she has completed any portion of the program.

Further, as the Government observes, Ms. Aguilera's original advisory sentencing guideline range was 97-121 months, reduced to 78-97 months after a two-level downward variance based on her safety valve eligibility. (Doc. 158 at 3 (citing PSR ¶ 63; Doc. 107).) "The Court varied downward and sentenced [Ms. Aguilera] to 60 months." (*Id.*; *see also* Doc. 114.) Ms. Aguilera has already received a sentence below the guideline range, and it does not appear that she has chosen to take advantage of available programming offered by the BOP. As a result, the Court finds that the § 3553(a) factors counsel against a sentence reduction in this case.

5

The Court strongly encourages Ms. Aguilera to participate in counseling and other drug abuse prevention and educational programming to improve her chances at a successful transition.

**THEREFORE,**

**IT IS ORDERED** that Ms. Aguilera's Motion for Order for Compassionate Release (Doc. 155) is **DENIED**.


_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE